# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AMANDA PIERNER-LYTGE,

   Plaintiff,

  v.                                     Case No. 17-CV-1380

PATRICK MITCHELL and
SCOTT POST,

   Defendants.

## DECISION AND ORDER ON PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Amanda Pierner-Lytge brings this 42 U.S.C. § 1983 lawsuit against Patrick Mitchell and Scott Post in their official capacity as West Allis Chief of Police and City Attorney, respectively. (Docket # 1.) Pierner-Lytge alleges that, on several occasions, the defendants seized and retained her property in violation of the Second, Fourth, and Eighth Amendments to the U.S. Constitution. (*Id.*) Pierner-Lytge moves for summary judgment. (Docket # 15.) For the reasons below, Pierner-Lytge's motion for summary judgment will be denied.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477

U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

### UNDISPUTED FACTS[1]

*1.   Background*

Pierner-Lytge has been diagnosed as having bipolar disorder. (Defendants' Proposed Findings of Fact ("DPFOF"), Docket # 21 ¶ 1.) She has cut herself to relieve stress. (*Id.* ¶ 2.)

---

[1] In her motion for summary judgment, Pierner-Lytge repeatedly makes factual statements without citing to the Proposed Findings of Fact. (Docket # 16 at 2 (citing to a police incident report), 4 (citing to a deposition), 8–10 and 14–18 (citing to multiple depositions and exhibits), 21 (citing to a deposition).) As the defendants point out in their response brief, (Docket # 19 3–5), Civil Local Rule 56(6) requires that "[a]ssertions of fact in the parties' supporting memoranda must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts." Pierner-Lytge does not address this in her reply brief or attempt to amend her motion to comply with the local rule. I will ignore any factual assertions in her motion that are not supported by undisputed findings of fact in either the PPFOF or the DPFOF.

At one time, she was a patient at the Dewey Center in Milwaukee. (*Id.* ¶ 3.) At times, she has not taken her medication as prescribed for her bipolar disorder. (*Id.* ¶ 4.) Since at least 2016, she has had suicidal thoughts. (*Id.* ¶ 5.) She has made suicidal statements on social media in the past, resulting in her friends contacting law enforcement to check on her. (*Id.* ¶ 12.)

On May 3, 2016, West Allis police officers were dispatched to 915 South 111th Street in West Allis for a welfare check on Pierner-Lytge. (*Id.* ¶ 7.) Pierner-Lytge told officers that she had cut herself prior to the interaction with the officers. (*Id.* ¶ 8.) She told the officers that she was feeling suicidal, but that she did not have a plan to harm herself. (*Id.* ¶ 9.) She also told the officers that she had not taken her bipolar medication for two years. (*Id.* ¶ 11.) The West Allis Police transported her to the Dewey Center without incident. (*Id.* ¶ 10.)

On July 27, 2016, West Allis Police officers were contacted by Ryan Jarnagin and subsequently performed a welfare check on Pierner-Lytge. (*Id.* ¶ 13.) The officers noted several superficial lacerations to Pierner-Lytge's arm, which were self-inflicted. (*Id.* ¶ 14.) She informed the officers that she wanted to harm herself. (*Id.*) She stated that she had been sexually assaulted in June 2016, and fired from her job following the sexual assault. (*Id.*) She informed the officers that the Milwaukee County DA's office was not going to issue charges against the offenders in her sexual assault. (*Id.*) Pierner-Lytge voluntarily sought treatment from mental health professionals. (*Id.* ¶ 17.) West Allis Police officers conveyed her to Milwaukee County Mental Health facility without incident for an evaluation. (*Id.* ¶ 17.)

Also on July 27, 2016, Pierner-Lytge posted on her social media account: "Just got home from talking with the DA. Doesn't see the fear of force necessary to prosecute. Doesn't help the cop left out the part about dude threatening to corner me in a Porta potty

either…So yea now I'm stuck. Having really strong urges to cut again. Doesn't feel like living either. It feels like rape charges are never brought about unless the victim gets beat up or killed." (*Id.* ¶ 16.) She also posted, "I can't cope anymore." (*Id.*)

On July 30, 2016, West Allis Police officers made contact with Pierner-Lytge in the parking lot of Greenfield Park. (*Id.* ¶ 18.) She informed the officers she was dealing poorly with a traumatic incident. (*Id.*) She informed the officers that she was not suicidal, but she really needed mental health treatment. (*Id.*) She told the officers she would find it beneficial to go to inpatient counseling. (*Id.*) West Allis Police officer Steven Martin contacted mental health facilities in Milwaukee County and in Waukesha County to assist Pierner-Lytge in finding mental health support. (*Id.* ¶ 19.) None of the mental health facilities contacted would admit her if she was not suicidal. (*Id.*) Pierner-Lytge told West Allis Police that she would contact NAMI for assistance. (*Id.*) She then left Greenfield Park on her own, without needing police assistance. (*Id.* ¶ 20.)

On September 18 or 28, 2016,[2] West Allis Police officers were dispatched to the intersection of South 112th Street and West Walker Street, and encountered Pierner-Lytge, who told them that she was feeling depressed and had walked around her neighborhood for three hours in an attempt to collect herself. (*Id.* ¶ 21.) She told police that walking the neighborhood did not help her to collect herself, so she asked that they transport her to Milwaukee County Mental Health. (*Id.*)

West Allis Police officers searched Pierner-Lytge prior to transporting her to Milwaukee County Mental Health and found an electronic control device (taser) and a folding

---

[2] The Plaintiff's Proposed Findings of Fact ("PPFOF") (Docket # 17) says this incident occurred on September 18, while DPFOF says it occurred on September 28. Neither party disputes the other party's date. (PPFOF ¶ 18, DPFOF ¶ 21.)

knife. (*Id.* ¶ 22.) The officers transported the items to the West Allis Police Department Control Room while Pierner-Lytge was at Milwaukee County Mental Health, because the facility would not allow those items. (*Id.*; Plaintiff's Proposed Findings of Fact ("PPFOF"), Docket # 17 ¶ 20.) The items were taken for "safekeeping." (PPFOF ¶ 18.) West Allis Police officers transported Pierner-Lytge to Milwaukee County Mental Health upon her request. (DPFOF ¶ 22.) The items were returned to her without a petition to the court, as they were not seized for a criminal charge or for evidence in any way. (PPFOF ¶ 19.)

2. *November 27, 2016 Incident*

On November 27, 2016, West Allis Police officers responded to the parking lot of the Target at 2600 South 108th Street, where Pierner-Lytge was located in her vehicle. (DPFOF ¶ 23.) The officers reported that she had several small cuts on her left forearm. (*Id.*) Officers asked her if she had been cutting herself, and she said yes. (*Id.* ¶ 24.) She told the officers that she cut herself because she was stressed out because of school and work and that cutting relieves the stress. (*Id.* ¶ 26.) She told the officers she had attempted suicide in the past, and that she took medication relating to her attempted suicides. (*Id.*) She stated she cut herself for stress relief and not for the purpose of attempting suicide. (*Id.* ¶ 27.) She stated she had no intention of harming herself and she did not wish to die. (*Id.*)

Officer Kendall observed a handgun in a cup holder of Pierner-Lytge's car and relayed that information to the other officer responding for officer safety. (PPFOF ¶ 21.) The West Allis Police officers removed Pierner-Lytge from her vehicle and patted her down. (DPFOF ¶ 25.) Pierner-Lytge complied with officer commands during this interaction. (PPFOF ¶ 22; Defendants' Response to PPFOF, Docket # 20 ¶ 22.) The officers asked Pierner-Lytge if she had any weapons in her vehicle and she responded that she had a

5

Concealed Carry Permit and that there were weapons in the vehicle. (DPFOF ¶ 24.) The officers took possession of a firearm located in Pierner-Lytge's vehicle (in plain view next to the center console), described as a black Glock model 17, 9mm handgun, as well as a black Glock 9mm magazine with 16 Hornady 9mm Luger cartridges, a black clip-on nylon holster, a black Smith and Wesson knife, a camouflage folding knife, and a black pitbull stun-gun. (*Id.* ¶ 29.) The officers removed all weapons from the vehicle. (PPFOF ¶ 23.) West Allis police took Pierner-Lytge's firearms and property for safekeeping. (DPFOF ¶ 30.) The weapons were not left in the vehicle because there was a possibility it could be broken into. (PPFOF ¶ 26.)

It is the policy of the West Allis Police Department to give any weapons belonging to patients to law enforcement personnel for safekeeping if law enforcement personnel are present when the patient is being placed in an ambulance. (DPFOF ¶ 32.) It is the policy of the Aurora West Allis Hospital that patients being transported in ambulances may not bring weapons in the building. (*Id.* ¶ 34.)

The parties dispute the nature of Pierner-Lytge's statement about going to the hospital, whether she said she would be willing to go to the hospital for medical treatment and speak with a medical professional (DPFOF ¶ 28) or just agreed to the suggestion to speak with someone at the hospital about her stress (Plaintiff's Response to DPFOF, Docket # 25 ¶ 28). Pierner-Lytge was transported by ambulance to Aurora West Allis where she was treated and assessed by medical staff. (DPFOF ¶ 31.) There, Pierner-Lytge spoke with a social worker. (*Id.* ¶ 33.) Because Pierner-Lytge was willing to seek voluntary mental health treatment, a Chapter 51 detention was unnecessary.

Later in the day, Officer Kendall was shown the discharge paperwork. (PPFOF ¶ 30; Defendants' Response to PPFOF, Docket # 20 ¶ 30.) Officer Kendall believed Pierner-Lytge

6

could simply ask for the property back as there was no criminal charge, allegation, or Chapter 51 hold. (PPFOF ¶ 31; Defendants' Response to PPFOF, Docket # 20 ¶ 31.) Officer Kendall verified through the Police Department systems that Pierner-Lytge was not a threat to herself or others after the medical procedure she was transported for. (PPFOF ¶ 32; Defendants' Response to PPFOF, Docket # 20 ¶ 32.) Pierner-Lytge had no orders against her prohibiting the possession of firearms and was told she could purchase a different one during the time she was denied possession of the firearm. (PPFOF ¶ 35.)

Pierner-Lytge filed a petition for return of property with the Milwaukee County Circuit Court, and on January 18, 2017 the court ordered that the West Allis Police Department return her taser, knife, and holster, but not her firearm. (*Id.* ¶ 36.) The court told Pierner-Lytge she would have to refile in August or September. (*Id.* ¶ 37.) On September 25, 2017, the Milwaukee County Circuit Court held a hearing on Pierner-Lytge's renewed petition for return of her firearm, which the court granted. (*Id.* ¶ 38.) This was the first order to the City of West Allis to return Pierner-Lytge's firearm. (*Id.* ¶ 40.) She received her firearm on September 28, 2017. (*Id.* ¶ 39; PPFOF ¶ 34; Defendants' Response to PPFOF, Docket # 20 ¶ 34.)

3. *Further Incidents*

On December 5, 2016, Pierner-Lytge called the West Allis Police Department and West Allis Police officers responded to her address. (DPFOF ¶ 41.) West Allis Police officers transported Pierner-Lytge to Milwaukee County Mental Health so that she could speak with someone. (*Id.*) Pierner-Lytge told West Allis Police officers that she had not slept for three days. (*Id.* ¶ 42.) She told West Allis Police officers she wanted a ride to the Milwaukee County Mental Health Complex. (*Id.*) She also told them that she was on medication for

7

anxiety and bipolar disorder, and had thoughts of harming someone else, but not herself. (*Id.*)

On March 27, 2017, West Allis Police officers were dispatched to 915 South 111th Street because Pierner-Lytge requested that they transport her to Milwaukee County Mental Health. (*Id.* ¶ 43.) She informed West Allis Police officers that she was bipolar and that her medication was not being effective. (*Id.*) She stated she was having thoughts of cutting her wrists in an attempt to harm herself, but had not yet done so and had no physical injuries. (*Id.*) She also stated she believed she was suffering from sleep deprivation. (*Id.* ¶ 44.) She told officers she had a history of mental health issues and attempts to harm herself, which had been an ongoing issue since she was a child. (*Id.*) She requested to seek voluntary treatment from Milwaukee County Mental Health. (*Id.*) The officers transported her to Milwaukee County Mental Health. (*Id.* ¶ 45.)

4. *May 26, 2017 Incident*

On May 26, 2017, West Allis Police officers were dispatched to Speedway located at 715 South 108th Street where they encountered Pierner-Lytge. (*Id.* ¶ 46.) She informed West Allis Police officers that she was very depressed and had thoughts of suicide and had for a long time. (*Id.*) She told officers she was dealing with a lot of stress and anxiety. (*Id.*) She told officers she had been involved in an incident with a firearm with a person she considered a friend over the weekend, and that the incident was reported to the City of Waukesha police. (*Id.* ¶ 47.) She informed the officers that she cut herself with a small razor blade as a temporary relief to her stress and depression. (*Id.* ¶ 48.) She also told officers she had access to firearms as she was a security officer, and that the firearm was in the trunk of her vehicle. (*Id.* ¶ 49.) She told officers that she had thoughts of killing herself with her handgun, that she imagined

8

"blowing her brains out," but that she was "too chicken shit to do it." (*Id.* ¶ 50.)

Officer Foy discussed the possibilities with her of seeking mental health help on a voluntary basis, whether at one of the local hospitals or one of the local mental health facilities, and Pierner-Lytge told Officer Foy she was not going to either. (*Id.* ¶ 51.) Officer Foy felt Pierner-Lytge needed mental health assistance, and because Pierner-Lytge wasn't willing to go voluntarily, Officer Foy detained her and transported her to Milwaukee County Mental Health. (*Id.* ¶ 52, 55.) Pierner-Lytge was placed in the West Allis Police Department's custody on an emergency detention under Chapter 51. (*Id.* ¶ 53, PPFOF ¶ 36.) Pierner-Lytge attempted to get out of the handcuffs, but was unable to do so. (DPFOF ¶ 54.)

West Allis Police officers took possession of the following items from Pierner-Lytge's vehicle: a handgun, ammunition, a lockbox and key, and a folding knife. (*Id.* ¶ 56.) They did so due to Pierner-Lytge's suicidal statements, West Allis Police Department policies 5.1.2 and 7.1.2 regarding search and property retention of detainees, and the policy of Milwaukee County Mental Health that prohibits weapons on its premises. (*Id.* ¶ 57.) The firearm was located in the trunk of the vehicle. (PPFOF ¶ 37.) Pierner-Lytge gave officers her keys for the purpose of giving the keys to her friend to transport the vehicle. (*Id.* ¶ 39.) Before the officers did so, they entered the vehicle and took the firearm and accessories located within the safe. (*Id.* ¶ 40.) They then delivered the keys to Pierner-Lytge's friend so he could transport the vehicle. (*Id.*)

The same day, the City of West Allis Police Department provided Pierner-Lytge with a Petition for Return of Property and required her to petition the court for a property return. (PPFOF ¶ 41, DPFOF ¶ 58.) On July 5, 2017, the Milwaukee County Circuit Court issued an order granting Pierner-Lytge return of her firearm, ammunition, and knife because there had

been no allegation of a crime or any Chapter 51 process that prohibited her from possessing the firearm. (PPFOF ¶ 41, DPFOF ¶ 59.) On July 10, 2017, forty-five days after the seizure of the weapons and five days after the court order, the West Allis Police Department returned Pierner-Lytge's firearm, ammunition, and knife to her. (PPFOF ¶ 42, DPFOF ¶ 60.)

     5.    *West Allice Police Department Policy*

The West Allis Police Department has different policies for returning firearms and returning other types of property. (PPFOF ¶ 6.) A petition for property return is not required to return a firearm in some instances. (*Id.* ¶ 7.) The City Attorney has the authority to determine who will be required to petition the courts for return of property. (*Id.* ¶ 8.) The parties otherwise dispute the nature of the West Allis Police Department policy regarding the seizure and retention of firearms and other weapons. (Defendants' Response to PPFOF, Docket # 20 ¶¶ 5–17.)

**ANALYSIS**

Wis. Stat. § 968.20 sets out the procedure for the return of property that has been seized by the police. Of relevance here, Wis. Stat. § 968.20(1m)(d) states as follows:

> (d)1. If the seized property is a firearm, the property has not been returned under this section, and a person claiming the right to possession of the firearm has applied for its return under sub. (1), the court shall order a hearing under sub. (1) to occur within 20 business days after the person applies for the return. If, at the hearing, all conditions under sub. (1) have been met and the person is not prohibited from possessing a firearm under state or federal law as determined by using information provided under s. 165.63, the court shall, within 5 days of the completion of the hearing and using a return of firearms form developed by the director of state courts, order the property returned if one of the following has occurred:
>
> a. The district attorney has affirmatively declined to file charges in connection with the seizure against the person.

b. All charges filed in connection with the seizure against the person have been dismissed.

c. Ten months have passed since the seizure and no charges in connection with the seizure have been filed against the person.

d. The trial court has reached final disposition for all charges in connection with the seizure and the person has not been adjudged guilty, or not guilty by reason of mental disease or defect, of a crime in connection with the seizure.

Pierner-Lytge brings this lawsuit under 42 U.S.C. § 1983 arguing that Wis. Stat. § 968.20(1m)(d) as applied by the defendants is unconstitutional. (Docket # 1 ¶¶ 52–114.) She argues that the West Allis Police Department has a policy in place for the return of property/evidence, but no policy in place for the return of property kept for safekeeping. (Docket # 24 at 2.) Accordingly, she alleges that the seizure and retention of her firearms violated her Second, Fourth, and Eighth Amendment rights. Pierner-Lytge sues the defendants in their official capacities.

In *Monell v. Dept't of Soc. Servs. Of City of New York*, the Supreme Court held that local officials in their official capacities can be sued directly under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. 658, 690 (1978). To establish liability under *Monell*, a plaintiff must "show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation." *Jones v. City of Chicago*, 787 F.2d 200, 203 (7th Cir. 1986) (citing *Monell*, 436 U.S. at 690–694). The Seventh Circuit has explained that unconstitutional policies or customs can take the following three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by

> written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003) (citing *Garrison v. Burke*, 165 F.3d 565, 571–572 (7th Cir. 1999)).

Here, Pierner-Lytge appears to allege that the seizure and retention of her weapons was due to an unconstitutional policy or custom: depriving citizens of their firearms based on city officials' discretionary evaluations of the claimant's mental health. (Docket # 16 at 7.) To obtain summary judgment in her favor, Pierner-Lytge must show that the municipal policy or practice was the "direct cause" or "moving force" behind the constitutional violation. *Minx v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (internal citation omitted). This can be demonstrated one of two ways: (1) by showing that the policy itself is unconstitutional; or (2) by "showing a series of bad acts and inviting the court to infer from them the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officials." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995).

Pierner-Lytge fails to establish *Monell* liability under either method. The parties dispute most of the facts relevant to the policy. The only undisputed facts concerning the West Allis Police Department's policy or custom for return of property are that there are different policies for returning firearms and returning other types of property, a petition for property return is not required to return a firearm in some instances, and the city attorney has the authority to determine who will be required to petition the courts for return of property. (PPFOF ¶¶ 6–8.) As a result, there are genuine issues of material fact as to

whether the policy or custom underlying the retention of Pierner-Lytge's weapons was itself unconstitutional. The scant undisputed facts are not sufficient to determine that an unconstitutional policy or custom existed and caused Pierner-Lytge injury as a matter of law such that summary judgment is warranted.

Pierner-Lytge has also not established *Monell* liability under the "series of bad acts" method. When the "series of bad acts" method is used, "proof of a single act of misconduct will not suffice; for it is the series that lays the premise of the system of inference." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995) (internal citation omitted). In this case, Pierner-Lytge's claim rests on two incidents of alleged unconstitutional conduct (continued retention of her firearms and attempted retention of her firearms). This is insufficient to establish *Monell* liability because two incidents are not a "series of bad acts" from which a rational jury could infer that a policy-maker was aware of and condoned the unconstitutional acts of subordinate officials. *Id*.

On the record before me, drawing all inferences in a light most favorable to the defendants, there are genuine issues of material fact about the existence of an unconstitutional policy, custom, or practice in the West Allis Police Department and/or the City Attorney's Office. Accordingly, Pierner-Lytge's motion for summary judgment will be denied and I need not address the merits of her constitutional claims.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Pierner-Lytge's motion for summary judgment (Docket # 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court will contact the parties to schedule a scheduling conference in this matter.

Dated at Milwaukee, Wisconsin this 26th day of November, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge